FILED
CLERK

3/17/2015 1:52 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ANAND DASRATH,

                Plaintiff,

    -against-

STONY BROOK UNIVERSITY MEDICAL
CENTER, JEANNENE STRIANSE,

                Defendants.
----------------------------------------------------------X
FEUERSTEIN, J.

**ORDER**

12-CV-1484 (SJF)(SIL)

Plaintiff Anand Dasrath ("Dasrath" or "plaintiff") commenced this action against his former employer, Stony Brook University Medical Center (the "Medical Center") and certain employees of the Medical Center alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII") and the New York State Human Rights Law ("NYSHRL"). Defendants have moved for summary judgment on plaintiff's only remaining claims: (i) discrimination in violation of Title VII against the Medical Center, on grounds other than hostile work environment, and (ii) discrimination in violation of NYSHRL § 296(1) against defendant Jeannene Strianse ("Strianse") in her individual capacity. For the reasons set forth below, defendants' motion is granted in its entirety and the Amended Complaint is dismissed.

I.      BACKGROUND

      A.    Factual Background[1]

           1.    Plaintiff's Work at the Medical Center

---

[1] The facts are taken from the undisputed assertions set forth in Defendants' Rule 56.1 Statement of Material Facts ("Def. 56.1 Stmt.") [Docket Entry No. 47-2], the Affirmation of Marsha W. Yee in Support of Defendants' Motion for Summary Judgment ("Yee Aff.") and the attached exhibits [Docket

Plaintiff, who identifies his race as East Indian and national origin as Guyanese (Def. 56.1 Stmt. ¶ 1; [Docket Entry Nos. 3-5 (the "Amended Complaint" or "Am. Compl.") ¶ 1]), was employed as a TH [Teaching Hospital] pharmacist in the Pharmacy Department at the Medical Center from October 2006 to April 2011. Def. 56.1 Stmt. ¶ 2; Am. Compl. ¶¶ 18, 48.

Plaintiff was hired for the night shift at the Medical Center's Pharmacy Department (*see* Def. 56.1 Stmt. ¶ 10; Yee Aff., Ex L; Yee Aff., Ex. A ("Dasrath Dep."), at 194:6-8), effective October 5, 2006, and received "a temporary salary increase in the amount of $11,500…to recognize the temporary increase in duties and responsibilities assumed on the night shift." Yee Aff., Ex. L. Plaintiff's work days were generally Mondays, Tuesdays, Thursdays and Fridays from October 2006 to May 2007; Wednesdays, Thursdays and Fridays from May 2007 to September 2007; Thursdays, Fridays and Saturdays from September 2007 to October 2008; and Fridays, Saturdays and Sundays from October 2008 through April 2011. Def. 56.1 Stmt. ¶ 33; Yee Aff., Ex. O (Timesheets). Plaintiff was to perform intravenous ("IV") fluid preparations. Am. Compl. ¶ 34. IV preparation is one of three (3) possible assignments for night shift pharmacists; other assignments on the night shift are order entry and Main Pharmacy. Def. 56.1 Stmt. ¶ 23; Yee Aff., Ex. I ("Ferguson Decl.") ¶ 13. Order entry involves checking physician

Entry Nos. 48-50], Plaintiff's Response to Defendants' Rule 56.1 Statement of Facts ("Pl. Resp. to Def. 56.1 Stmt.") [Docket Entry No. 52-1], and the affirmation of Jesse C. Rose in opposition to defendants' motion for summary judgment ("Rose Aff.") and the attached exhibits. [Docket Entry No. 52-2-6]. Statements in the Def. 56.1 Stmt. to which plaintiff objected but failed to provide a citation to the evidence as required by Local Rule 56.1(d) are not considered disputed. *See Feis v. United States*, 394 F. App'x 797, 799-800 (2d Cir. 2010) (summary order) (affirming district court's declination to "consider as disputed any statement supported by admissible evidence to which Plaintiff objects, *but does not support with evidence*"… in perfect accordance with Local Rule 56.1(d)" (internal citations omitted, emphasis in original)); *see also* Local Rule 56.1(d) (requiring "each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)"). Unless otherwise noted, the facts stated herein are not in dispute.

orders for appropriateness with respect to age, dose and frequency, and contacting physicians when necessary (Def. 56.1 Stmt. ¶ 24; Ferguson Decl. ¶ 14); the Main Pharmacy assignment entails order entry, checking medications and drug information, and dispensing narcotics. Def. 56.1 Stmt. ¶ 25; Ferguson Decl. ¶ 15.

Defendant Strianse has served as Director of Pharmacy at Stony Brook University Hospital since 2003. Def. 56.1 Stmt. ¶ 6; Am. Compl. ¶ 15; Yee Aff., Ex D ("Strianse Decl.") ¶ 1; Dasrath Dep., at 173:12-16. Since 2006, Strianse has reported to Laurie Rafkin ("Rafkin"), Associate Director of Hospital Services. Def. 56.1 Stmt. ¶ 15; Strianse Decl. ¶ 3.

### 2. Plaintiff's Counseling Memoranda and Performance Evaluations

During the course of his employment, plaintiff received multiple counseling memoranda for unprofessional behavior and tardiness. In July 26, 2007, plaintiff was issued a written counseling memorandum for using foul language (i.e., "F.U.") to a co-worker. Def. 56.1 Stmt. ¶ 71; Yee Aff., Ex. P ("July 2007 Counseling Memorandum"). In October 9, 2009, plaintiff was issued another written counseling memorandum for cursing loudly at Peter Giacopelli ("Giacopelli"), a supervisor at the Pharmacy and a former defendant in this action, when Giacopelli marked plaintiff "late" on the wall attendance list, calling Giacopelli a racial epithet and "scratching over" the late marking so hard that it went through the wall. Def. 56.1 Stmt. ¶ 75; Yee Aff., Ex. T ("October 2009 Counseling Memorandum"). Plaintiff denies that he called Giacopelli a racial epithet. *See* Yee Aff., Ex. T; Pl. Resp. to Def. 56.1 Stmt. ¶ 75. On November 23, 2009, plaintiff was issued a written counseling memorandum for arriving late and not notifying a supervisor. Def. 56.1 Stmt. ¶ 76; Yee Aff., Ex. U ("November 2009 Counseling Memorandum").

Over the course of his employment, plaintiff received both positive and negative performance evaluations. Plaintiff's 2006-2007 performance evaluation rated plaintiff as "improvement needed" (category 2) in multiple areas (Yee Aff., Ex. Q ("2006-2007 Performance Evaluation")), which plaintiff acknowledges was a "bad" grade. (Dasrath Dep., at 255:3-6). Plaintiff's 2007-2008 performance evaluation rated him as "outstanding" (category 5), "very good" (category 4) or "good" (category 3) in all applicable categories. Yee Aff., Ex. S ("2007-2008 Performance Evaluation"). Plaintiff's 2008-2009 Performance Evaluation rated him as "unsatisfactory" (category 1), the lowest rating, in multiple categories, his overall performance as "unsatisfactory" and recommended "non-renewal." Def. 56.1 Stmt. ¶ 78; Yee Aff., Ex. V ("2008-2009 Performance Evaluation"), at 4. On April 9, 2010, Giacopelli and Karl Von Braun ("Von Braun"), a Pharmacy supervisor and a former defendant in this action, met with plaintiff regarding his 2008-2009 Performance Evaluation and asked him to sign it (the "April 9, 2010 Meeting"). Am. Compl. ¶ 39. Plaintiff refused to sign his performance evaluation claiming he was only presented with the first page of the multi-page form. Am. Compl. ¶ 39. That same day, plaintiff called Strianse at home to complain about Giacopelli's "continued discrimination" claiming that Giacopelli "wrote a fabricated unsatisfactory evaluation about [him] solely due to his race and national origin." Def. 56.1 Stmt. ¶ 81; Am. Compl. ¶ 41. Plaintiff alleges that Strianse ignored plaintiff's complaint and failed to take any action against Giacopelli (Am. Compl. ¶ 41); defendants allege that Strianse met with Dasrath regarding his complaint against Giacopelli, met with Giacopelli and Von Braun, and also discussed Dasrath's complaint with Human Resources. Def. 56.1 Stmt. ¶¶ 83-85; Yee Aff., Ex. C ("Strianse Dep."), at 131:6-15, 133:10-25; 134-135.

### 3. Plaintiff's 2010 UUP Discretionary Bonus

Pursuant to the applicable United University Professions ("UUP") contract, certain staff represented by UUP are eligible for an annual discretionary increase. Def. 56.1 Stmt. ¶ 14; Yee Aff., Ex. K ("2007-2011 UUP Agreement"), § 20.9. Plaintiff received discretionary UUP increases in 2007, 2008 and 2009. Yee Aff., Ex. M. At the end of the 2010 calendar year, Strianse and Rafkin determined that plaintiff would not receive a UUP bonus and/or salary increase (Am. Compl. ¶ 33; Strianse Decl. ¶ 6), a decision that Strianse recalls "was based upon Dasrath's performance problems." Strianse Decl. ¶ 6. Plaintiff does not deny that he did not receive a discretionary bonus in 2010 (*see* Pl. Resp. to Def. 56.1 Stmt. ¶ 17) but argues that allegations that caused him not to receive the bonus "were falsified against him" (Pl. Opp., at 7) and that "every other employee" (*id.*) received a UUP discretionary bonus except for Richard Galbo ("Galbo") a Caucasian employee. Def. 56.1 Stmt. ¶ 19; Strianse Decl. ¶ 7. Defendants allege that Galbo did not receive a discretionary bonus in 2010 because of his "attendance issues" (Def. 56.1 Stmt. ¶ 18; Strianse Decl. ¶ 7); while plaintiff alleges it was because Galbo "was retiring" and "had no need for it." Pl. Opp., at 7.

### 4. Alleged Discriminatory Remarks

According to plaintiff, his supervisors and colleagues made numerous remarks about his national origin and race which were discriminatory. Plaintiff alleges that Giacopelli stated that "Guyanese people were all Bucks who did not wear clothes" (Am. Compl. ¶ 23), "did not conduct marriage ceremonies" (*id.*), "did not have any formal education (*id.*), and that "all Guyanese men would make babies and leave the scene." *Id.* Plaintiff also alleges that Giacopelli stated that "people from the jungles of Guyana were [in]capable of working in a responsible job as an I.V. pharmacist" (*id.* ¶ 26), that plaintiff did not "belong[] here" (*id.*), that he could "step on

[plaintiff] like a cockroach" (*id.* ¶ 27), that "foreigners create a lot of problems in our country" (*id.* ¶ 25), that plaintiff was "monkey shit" (*id.* ¶ 42) and should "go back to the jungles of Guyana" (*id.*), and that on a number of occasions while plaintiff was eating lunch, Giacopelli asked him, "Is that jaguar meat you are eating?  Did you kill the poor jaguar and eat its meat?" *Id.* ¶ 28; *see also* Dasrath Dep., at 41-42, 127-144.  Plaintiff also alleges that on October 9, 2009 he complained to Strianse that Giacopelli was signing him in late for work and accusing him of eating jaguar meat (Am. Compl. ¶ 29) and that, instead of addressing the allegations, Strianse called plaintiff "violent, insubordinate, and even used racial slurs against him" (*id.*) calling him a "monkey."  Dasrath Dep., at 159:6-161:15.  Plaintiff also alleges that on September 24, 2010, he complained to Mr. Santo Barravecchio, defendants' Labor Relations Manager, about continued racial discrimination but that no action was taken in response to his complaint. Am. Compl. ¶ 45.

    5.  Plaintiff's Termination

    Although the date on which plaintiff was informed of his termination is a subject of dispute,[2] it is undisputed that by April 12, 2011, plaintiff was aware of his impending termination when his attorney wrote a letter to the president of the Medical Center, Dr. Samuel Stanley, stating that plaintiff "recently heard through the grapevine that he [would] be terminated

---

[2]  Defendants allege that plaintiff was indirectly told at the April 9, 2010 Meeting that his term appointment was not being renewed (Def. 56.1 Stmt. ¶ 57; Yee Aff., Ex F ("Giacopelli Decl.") ¶ 5), that on or about April 22, 2010, two copies of a notice that plaintiff's appointment would not be renewed at the end of his term on April 30, 2011 were sent to plaintiff's address of record (Def. 56.1 Stmt. ¶¶ 59-63; Yee Aff., Ex J ("Merrick Decl.") ¶¶ 5-8; Yee Aff., Ex. Z ("Notice of Non-Renewal")), and that on May 28, 2010, Giacopelli placed a sealed envelope from the Human Resources Department containing a copy of the Notice of Non-Renewal in Dasrath's mailbox after Dasrath refused to take the envelope from Giacopelli in person.  Def. 56.1 Stmt. ¶¶ 64-70; Giacopelli Decl. ¶¶ 7-13; Strianse Decl. ¶¶ 24-25. Plaintiff denies that he was informed that his contract was not being renewed during the April 9, 2010 Meeting (Dasrath Aff. ¶ 26), and argues that Giacopelli never attempted to hand him an envelope, that he never received a notification of his non-renewal in his mailbox (Pl. Resp. to Def. 56.1 Stmt. ¶¶ 65-70; Dasrath Aff. ¶ 30), that the non-renewal letter defendants allegedly sent to him in April 2010 "was never delivered to [him]" and that he "was first informed that Stony Brook was not renewing [his] contract the following year, in April of 2011."  Dasrath Aff. ¶ 29.

soon by Stonybrook [sic] because of an invalid evaluation of him in 2010" and stating that "any

termination of him would be unlawful" because: (1) he never received the evaluation; (2) he was

deprived of his right to appeal the evaluation; (3) the evaluation was invalid because it was

completed within six (6) months of the expiration of his term; and (4) "any notice of non-renewal

[of his contract] based on the invalid evaluation would be a nullity."  [Docket Entry No. 16-5].

The letter also stated that plaintiff "believes that the unfavorable evaluation and the apparent plan

to terminate him as well as the related conduct of Stony Brook towards him constitute unlawful

discrimination against him because of his race/national origin." *Id.*  On April 29, 2011, the

Office of General Counsel of Stony Brook University responded to plaintiff's attorney,

informing him that Mr. Dasrath's appointment "[would] terminate on April 30, 2011 and he was

so notified by letter, sent via Certified U.S. Mail, dated April 22, 2010," and denying all

allegations of retaliation or discrimination against plaintiff.  Yee Aff., Ex. EE.  Plaintiff alleges

that on April 29, 2011, Strianse terminated his employment "without any warning and without

even providing a reason."  Am. Compl. ¶ 48.

     B.     Evidentiary Objections

Plaintiff and defendants accuse each other of submitting inadmissible hearsay and/or

conclusory statements on the motion.  *See* Docket Entry Nos. 52 (Plaintiff's Memorandum of

Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp.")), at 1, 5; Pl.

Resp. to Def. 56.1 Stmt." ¶¶ 29, 30, 86, 87; Docket Entry No. 53 (Reply Memorandum of Law in

Further Support of Defendants' Motion for Summary Judgment" ("Def. Reply")), at 5.

Affidavits used in support or opposition to a motion for summary judgment must "be

made on personal knowledge…set forth such facts as would be admissible in evidence,

and…show affirmatively that the affiant is competent to testify to the matters stated therein."

Fed. R. Civ. P. 56(e). "Hearsay testimony...that would not be admissible if testified to at the trial may not properly be set forth in the Rule 56(e) affidavit." *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (internal citations and quotations omitted). While a court may strike "[h]earsay statements....which cannot be categorized as a hearsay exception, conclusory allegations, legal arguments, and statements not based upon personal knowledge" (*see Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 568 (E.D.N.Y. 1999) (collecting cases)), a court may also "simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible." *Doe v. Nat'l Bd. of Podiatric Med. Examiners*, No. 03-civ-4034, 2004 WL 912599, at *4 (S.D.N.Y. Apr. 29, 2004). "[R]ather than scrutinizing each line of each of the [parties' affidavits, declarations, and depositions] and discussing whether they contain conclusory allegations, legal arguments, or hearsay and whether such hearsay may be categorized as a hearsay exception, the Court, in its analysis of the motion for summary judgment, will only consider relevant evidence that is admissible pursuant to the principles enunciated above— including the frame-work established in Rule 56(e) of the Federal Rules of Civil Procedure and Local Rule 56.1." *Morris*, 37 F. Supp. 2d at 569; *see also Miller v. Batesville Casket Co.*, No. 02-civ-5612, 2007 WL 2120371, at *5 (E.D.N.Y. July 23, 2007), *aff'd in part, vacated in part sub nom.*, *Miller v. Batesville Casket Co.*, 312 F. App'x 404 (2d Cir. 2009).

Insofar as plaintiff objects to evidence submitted by defendants pursuant to Federal Rule of Evidence 1004 (*see* Pl. Resp. to Def. 56.1 Stmt. ¶¶ 9, 13, 15, 16, 29, 30, 50-52, 54, 55, 86, 88-94), the challenged statements do not attempt to prove the contents of an original writing, but state the declarant's personal knowledge as to certain policies and procedures of the Medical Center and/or the duties and performance of certain Medical Center employees. *See* Def. 56.1

Stmt. ¶¶ 9, 13, 15, 16, 29, 30, 50-52, 54, 55, 86, 88-94; Advisory Committee Notes to Fed. R. Evid. 1002 ("[a]n event may be proved by nondocumentary evidence, even though a written record of it was made. If, however, the event is sought to be proved by the written record, the rule applies."); *see also Spector v. Experian Info. Servs. Inc.*, 321 F. Supp. 2d 348, 354 (D. Conn. 2004), *United States v. Finkielstain*, 718 F. Supp. 1187, 1192 (S.D.N.Y. 1989).

C. Procedural Background

On March 27, 2012, Dasrath commenced this action against the Medical Center, alleging discrimination upon the basis of national origin and race in violation of Title VII. [Docket Entry No. 1].[3] On July 24, 2012, plaintiff filed an amended complaint against the Medical Center and Giacopelli, Von Braun and Strianse asserting discrimination and retaliation claims pursuant to Title VII and the NYSHRL. *See* Am. Compl. Plaintiff's Amended Complaint alleges that defendants discriminated against him upon the basis of his national origin and race by: (1) assigning him to work weekend night shifts every week while not assigning Caucasian pharmacists to work consecutive weekends (Am. Compl. ¶ 31); (2) failing to give him a pay differential for working weekend night shifts while giving a pay differential to other pharmacists (*id.* ¶ 32); (3) failing to give him a bonus and/or salary increase at the end of 2010 while giving all other pharmacists a bonus and salary increase of between one and three thousand dollars ($1,000.00-$3,000.00) (*id.* ¶ 33); (4) only allowing him to perform "intravenous fluid preparations" while assigning other pharmacists "this difficult work for only portions of their

---

[3]     The action was commenced after plaintiff filed charges of discrimination with the Equal Employment Opportunities Commission ("EEOC") and received a Notice of Right to Sue from the EEOC on December 29, 2011. Am. Compl. ¶¶ 5-7.

shifts" (*id*. ¶ 34); (5) giving him a "fabricated unsatisfactory [performance] evaluation" in April 2010 (*id*. ¶ 41); and (6) terminating his employment in April 2011. *Id*. ¶ 48.[4]

On October 19, 2012, defendants moved to dismiss the Amended Complaint. [Docket Entry No. 16]. By order dated August 9, 2013, this Court dismissed all but the claims for: (i) Title VII discrimination claim against the Medical Center, not based upon hostile work environment; and (ii) the NYSHRL § 296(1) discrimination claim against Strianse. [Docket Entry No. 21]. All dismissals were ordered with prejudice, except for the NYSHRL § 296(6) aiding and abetting claims against Strianse and Giacopelli, upon which the Court granted plaintiff leave to amend no later than August 30, 2013. The case was referred to Magistrate Judge William D. Wall to conduct and complete discovery by December 19, 2013. *See id.*

On December 19, 2013, plaintiff served defendants with his motion for leave to file a second amended complaint, seeking to reassert NYSHRL retaliation claims against the individual defendants, and to assert a new claim for retaliation under 42 U.S.C. § 1981 ("Section 1981") against the Medical Center, Strianse and Giacopelli. [Docket Entry No. 31]. On February 27, 2014, Magistrate Judge Wall issued a report recommending that plaintiff be denied leave to amend to assert retaliation claims against the Medical Center, but that plaintiff's motion be granted to the extent that it sought to assert retaliation claims pursuant to Section 1981 and NYSHRL against Strianse and Giacopelli. [Docket Entry No. 39 (the "Report")]. On April 29, 2014, this Court accepted the Report's recommendation that plaintiff be denied leave to amend

---

[4]     Plaintiff's opposition to defendants' motion for summary judgment raises claims not raised in his Complaint or Amended Complaint, including claims of denial of plaintiff's request for a daytime shift (Pl. Opp., at 7; Dasrath Dep., at 187:22-24), denial of a promotion (Dasrath Aff. ¶ 23) and disparate discipline. Dasrath Aff. ¶ 7. However, "it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment." *Bolden v. Cablevision Sys., Corp.*, No. 09-civ-2312, 2011 WL 3439532, at *4 n.4 (E.D.N.Y. July 26, 2011) (citing *Beckman v. United States Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000)).

to assert retaliation claims against the Medical Center, rejected the Report's remaining recommendations and denied plaintiff leave to amend to assert retaliation claims pursuant to Section 1981 and NYSHRL against Strianse and Giacopelli. *See* Docket Entry No. 44 (the "April 2014 Order"). Thus, the only claims that remain in this action are: (i) discrimination in violation of Title VII against the Medical Center, on grounds other than hostile work environment; and (ii) discrimination in violation of NYSHRL § 296(1) against Strianse. April 2014 Order, at 15; Pl. Resp. to Def. 56.1 Stmt. ¶ 8.

II.     DISCUSSION

A.      Standard of Review

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks omitted); *see also Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Summary judgment is appropriate when 'the record taken as a whole could not

lead a rational trier of fact to find for the non-moving party.'" *Smith v. Cnty. of Suffolk*, No. 13-civ-1230, 2015 WL 161701, at *5 (2d Cir. Jan. 14, 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment." *Chandok v. Klessig,* 632 F.3d 803, 812 (2d Cir. 2011); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that summary judgment is appropriate when the non-moving party has failed to make a sufficient showing on an essential element for which it bears the burden of proof).

   "The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). If the moving party satisfies its initial burden, "the burden shifts to the non-movant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006). "A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory…or based on speculation." *Major League Baseball,* 542 F.3d at 310; *Katel Ltd. Liability Co. v. AT & T Corp.,* 607 F.3d 60, 67 (2d Cir.2010) (accord); *see also Brown*, 654 F.3d at 358 (non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation" to defeat summary judgment (internal citations omitted)); *Niagara Mohawk Power Corp. v. Jones Chem*., Inc., 315 F.3d 171, 175 (2d Cir. 2003) ("Conclusory allegations, conjecture, and speculation... are insufficient to create a genuine issue of fact."). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be

evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252) (alterations in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

      B.      Plaintiff's Title VII Claims

      1.      Title VII

Title VII prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). Claims of discrimination under Title VII where there is no direct or overt evidence of discriminatory conduct are analyzed under the three-part burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). Under that framework, a plaintiff must establish a *prima facie* case of discrimination by showing that: (1) he is a member of a protected class; (2) he is qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *Id.*; *see McDonnell Douglas*, 411 U.S. at 802.

"If plaintiff succeeds in presenting a *prima facie* case, the defendant may rebut that showing by articulating a legitimate, non-discriminatory reason for the employment action." *Weinstock*, 224 F.3d at 42; *see Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The employer's "burden is one of production, not

persuasion...and involves no credibility assessment of the evidence." *Suarez v. Am. Stevedoring, Inc.*, No. 06-civ-6721, 2009 WL 3762686, at *9 (E.D.N.Y. Nov. 10, 2009) (citations omitted). "The employer need not *persuade* the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998) (emphasis in original).

"Upon the defendant's articulation of such a non-discriminatory reason for the employment action, the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture" and "[f]or the case to continue, the plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Weinstock*, 224 F.3d at 42. The plaintiff must produce "not simply 'some' evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the [employment action]." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (internal citations omitted). The question becomes "whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. To get to the jury, '[i]t is not enough ... to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination." *Weinstock*, 224 F.3d at 42 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519, 113 S. Ct. 2742, 2754, 125 L. Ed. 2d 407 (1993)). "What this means in the summary judgment context is that the plaintiff must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging her is false *and* as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1225

(2d Cir. 1994) (emphasis in original). "The ultimate burden then rests on the plaintiff to persuade the factfinder that the employer's proffered explanation is merely a pretext for its intentional discrimination." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998).

      2.      Plaintiff's Title VII Claims Based on Denial of Weekend Pay Differential, Assignment to Weekend Shift, Assignment to IV Preparation, and Denial 2010 Discretionary Bonus

Defendants do not contest that plaintiff has demonstrated the first two prongs of a *prima facie* case of discrimination (*see* Docket Entry No. 47-1 (Memorandum in Support of Defendants' Motion for Summary Judgment ("Def. Mem.")), at 6), but argue that Dasrath "cannot establish a *prima facie* case for his disparate treatment claims because the requisite adverse employment action is absent and/or such actions (or alleged actions) did not take place under circumstances giving rise to the interference of discrimination." Def. Mem., at 7. To constitute an "adverse" employment action, an action must represent a "materially adverse change" in a plaintiff's terms and conditions of employment (*Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (citations omitted)) and be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. N.Y.C. Board of Education,* 202 F.3d 636, 640 (2d Cir. 2000) (citations omitted). Employment actions "deemed sufficiently disadvantageous to constitute an adverse employment action include 'a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices...unique to a particular situation.'" *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163-64 (2d Cir. 2008) (citations omitted). Changes in assignments or responsibilities that do not "radical[ly] change" the nature of work are not typically adverse employment actions. *See Galabya,* 202 F.3d at 640 (quoting *Rodriguez v. Bd. of Ed.*, 620 F.2d 362, 366 (2d Cir. 1980)). "Moreover, a plaintiff must set forth objective

proof that the alleged action was materially adverse." *Potash v. Florida Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013); *see also Beyer*, 524 F.3d at 164 ("we require a plaintiff to proffer objective indicia of material disadvantage; "subjective, personal disappointment[ ]" is not enough").

Except for the 2008-2009 Performance Evaluation and the termination of plaintiff's employment in April 2011, none of the alleged actions constitute adverse employment actions and thus plaintiff has failed to state a *prima facie* case of discrimination for his claims based upon those actions.

### a.    Denial of Non-Existent Weekend Shift Differential

While plaintiff alleges that "[d]efendants always gave Pharmacists who worked weekend night shifts a pay differential to compensate them at an hourly rate that exceeded their base hourly rate" (Am. Compl. ¶ 32), that "[he] was the only employee who worked weekend evenings who did not receive this pay differential" (*id.*) and that "[u]pon information and belief, all of the other Pharmacists who received pay differentials were Caucasian" (*id.*), it is undisputed that "[t]here is no weekend shift differential (i.e., additional compensation for working weekends) for Hospital staff represented by United University Professions ("UUP"), including TH pharmacists" and "there was no weekend shift differential for Hospital staff represented by UUP during the period of Dasrath's employment at the Hospital." *See* Pl. Resp. to Def. 56.1 Stmt. ¶¶ 12, 13. Moreover, Dasrath appears to have abandoned this claim by not responding to the arguments in defendants' moving papers regarding this claim. *See, e.g.*, *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014); *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003), *order clarified*, No. 01-civ-5750, 2003 WL 21781941 (E.D.N.Y. July 29, 2003). Because there was no weekend pay differential that plaintiff could have been denied,

there is no adverse employment action upon which plaintiff may base this claim.

           b.       Assignment to Intravenous ("IV") Fluid Preparation

Plaintiff alleges that defendants only allowed him to perform "intravenous fluid preparations" while assigning other pharmacists "this difficult work for only portions of their shifts" (Am. Compl. ¶ 34), and that his requests for task assignments other than IV preparation were denied. Dasrath Dep., at 114:21-117:15. However, such allegations "of unfair work assignments, without more, do not amount to adverse employment actions because they are not materially adverse changes in the terms and conditions of plaintiff's employment." *Grant v. N.Y. State Office for People with Developmental Disabilities,* No. 12-civ-4729, 2013 WL 3973168, at *7 (E.D.N.Y. July 30, 2013) (dismissing complaint because "[t]he only adverse employment action that plaintiff allege[d] was discriminatory was his assignment to more onerous work assignments"). Even assuming, as Dasrath alleges, that IV preparation was the most difficult task on the night shift (*see* Dasrath Aff. ¶ 9), the assignment, which fell within the duties of his position (*see* Def. 56.1 Stmt. ¶ 23), is not an adverse employment action because Dasrath "cannot complaint of work properly assigned to [him]." *Hubbard v. Port Auth. of New York & New Jersey*, No. 05-civ-4396, 2008 WL 464694, at *11-12 (S.D.N.Y. Feb. 20, 2008) (no adverse employment action where "the clerical work...assigned to plaintiff, fell squarely within her job function"); *see also Williams v. New York City Housing Authority*, No. 03-civ-7764, 2008 WL 2695139, at *3 (S.D.N.Y. June 29, 2008), *aff'd*, 361 Fed. Appx. 220 (2d Cir. 2010). Since "plaintiff has not alleged that he was ever assigned tasks that exceeded his general job duties or that any assignment affected his pay, hours, or position within the organization, none of [his] allegations [regarding his assignment to IV preparation] is sufficient to establish an adverse

employment action." *Chandler v. AMR Am. Eagle Airline*, 251 F. Supp. 2d 1173, 1184 (E.D.N.Y. 2003).

c.      Assignment to Weekend Shift

Insofar as plaintiff alleges that he was assigned to work consecutive weekend shifts instead of Caucasian pharmacists (Am. Compl. ¶ 31), plaintiff has not identified any damage other than inconvenience. *See* Dasrath Dep., at 90:10-16 (answering the question of why it was a problem to work consecutive weekends with the following statement: "Who wants to work every weekend? I didn't want to work every weekend."); Pl. Opp., at 7 (the weekend shift "was not desirable"). Plaintiff has not alleged that his assignment to a weekend shift resulted in a reduction in wages or job responsibilities or was in any way a demotion and "[w]here [a] change in schedule does not occasion a reduction in wages or job responsibilities, unfavorable schedules are a mere inconvenience and not an adverse employment action." *Albuja v. Nat'l Broad. Co. Universal*, 851 F. Supp. 2d 599, 608 (S.D.N.Y. 2012) (holding that plaintiff could not establish a *prima facie* case of discrimination because his own testimony characterized his weekend schedule as inconvenient rather than materially adverse). Dasrath's failure to allege that the weekday schedule he allegedly requested, but did not receive "was anything more than [his] preferred schedule – *i.e.*, [he] does not allege that [he] suffered any material loss of wages or other benefits" due to his weekend schedule – is fatal to his claim of discrimination based on his weekend shift assignment because the requisite adverse employment action is lacking. *Tompkins v. Local 32BJ, SEIU*, No. 11-civ-0414, 2012 WL 1267876, at *5 (S.D.N.Y. Apr. 12, 2012); *see also Ruhling v. Tribune Co.*, No. 04-civ-2430, 2007 WL 28283, at *10 (E.D.N.Y. Jan. 3, 2007)

("a schedule change standing alone does not constitute an adverse employment action").

       d.      Denial of 2010 Discretionary Increase

Plaintiff alleges that "[d]efendants arbitrarily neglected to give [him] a bonus and/or salary increase for the year 2010" (Am. Compl. ¶ 33) which "was given to every other employee other than a one who had no need for it." Pl. Opp., at 7. While "[t]he denial of a bonus that an employee either expects to receive as a matter of course or that an employee is entitled to receive as a result of her performance is, like a reduction in an employee's salary, a 'materially adverse change' in the terms and conditions of employment and constitutes an adverse employment action…a discretionary bonus is something only adventitiously connected with the workplace and the denial of such a bonus is inherently ambiguous because the employee didn't count (or at least should not have counted) on it." *Davis v. New York City Dep't of Educ.*, No. 10-civ-3812, 2014 WL 917142, at *7 (E.D.N.Y. Mar. 7, 2014) (collecting cases) (internal citations and alterations omitted). Thus, "if the plaintiff can cite no facts suggesting that the discretionary pay was awarded as a matter of course or that [he] was otherwise entitled to expect or rely on it, the employer's decision not to award a discretionary bonus does not change the terms or conditions of Plaintiff's employment and consequently cannot constitute an adverse employment action." *Id.* (collecting cases) (internal citations omitted).

The evidence submitted by defendants demonstrates that the UUP increase is discretionary and not awarded as a matter of course. *See* 2007-2011 UUP Agreement, § 20.9; Strianse Decl. ¶¶ 4-5. While Dasrath may have expected or hoped for a bonus, his testimony reveals his understanding that the bonuses were discretionary and not awarded as a matter of course. *See id.*, at 104:3-6 ("They -- either they give you or they -- that's the bonus. Either they give you or they don't give you. Asking doesn't help."). Dasrath "cites no facts suggesting that

discretionary [bonus] was awarded as a matter of course or that he was otherwise entitled to expect or rely on it" and "[d]efendant's decision not to provide discretionary [bonus] did not change the terms or conditions of Plaintiff's employment, and therefore cannot support a *prima facie* case for discrimination." *Boyar v. City of New York*, No. 10-civ-65, 2010 WL 4345737, at *3 (S.D.N.Y. Oct. 28, 2010) ("failure to provide [discretionary pay] does not pass the test for an adverse employment action" (citations omitted)); *see also White v. Andy Frain Servs., Inc.*, No. 12-civ-5868, 2014 WL 3896066, at *6 (E.D.N.Y. Aug. 8, 2014) ("[plaintiff's] claim that he was denied a discretionary raise is also not an adverse employment action").

### 3. Plaintiff's Claims Based on 2008-2009 Performance Evaluation and Termination

#### a. Prima Facie Case of Employment Discrimination

Plaintiff's claims of a "fabricated unsatisfactory [performance] evaluation" in April 2010 (*id.* ¶ 41) and termination of his employment in April 2011 (*id.* ¶ 48) do allege adverse employment actions as "termination of employment is unquestionably an adverse employment action" (*Suarez*, 2009 WL 3762686, at *11), and while "negative reports or evaluations alone are generally not adverse employment actions…they can be considered adverse employment actions when they give rise to material adverse changes in work conditions." *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 217 (E.D.N.Y. 2014). Here, the unsatisfactory performance evaluation that plaintiff received in April 2010 recommended "non-renewal" (Def. 56.1 Stmt. ¶ 78; 2008-2009 Performance Evaluation, at 4); thus it arguably gave rise to material adverse changes in his work conditions, specifically his termination. *See Weber v. City of New York,* 973 F. Supp. 2d 227, 251 (E.D.N.Y. 2013).

Plaintiff alleges that these adverse employment actions took place under circumstances that give rise to the inference of discrimination because "these actions were taken by Defendant

Strianse and Mr. Giacopelli" (Pl. Opp., at 8) and "Defendant Strianse has referred to Plaintiff as a monkey and Mr. Giacopelli has made numerous disparaging comments towards Plaintiff because of his national origin and ethnicity" (*id.*) and these "comments create an inference that their adverse employment actions taken against Plaintiff were discriminatory." *Id.*

"It is well settled that verbal comments may constitute evidence of discriminatory intent if the plaintiff can establish a nexus between the alleged discriminatory remarks and the defendant's decision to terminate the plaintiff's employment." *Del Franco v. New York City Off-Track Betting Corp.*, 429 F. Supp. 2d 529, 536-37 (E.D.N.Y. 2006), *aff'd*, 245 F. App'x 42 (2d Cir. 2007). However, "stray remarks…[or] statements made by nondecisionmakers, or statements made by decisionmakers unrelated to the decisional process itself" do not constitute sufficient evidence to support a claim of [] discrimination." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J. concurring); *see also Hansberry v. Father Flanagan's Boys' Home*, No. 03-civ-3006, 2004 WL 3152393, at *6 (E.D.N.Y. Nov. 28, 2004). In determining whether isolated "stray remarks" are probative of discriminatory intent, district courts balance the following factors: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149-50 (2d Cir. 2010). Even assuming *arguendo* that plaintiff's 2008-2009 Performance Evaluation and termination took place under circumstances giving rise to an inference of discrimination, plaintiff's discrimination claims nevertheless fail because he has not shown that defendants' legitimate, nondiscriminatory explanations for the 2008-2009

Performance Evaluation and the termination were pretextual and that these actions were motivated in part by discrimination.

b.      Legitimate, Non-Discriminatory Explanations

Plaintiff's 2008-2009 Performance Evaluation rated him "Unsatisfactory" overall and recommended "non-renewal." 2008-2009 Performance Evaluation, at 4. The evaluative comments noted that Dasrath: "[d]oes not participate in order entry" (*id*., at 2), "does not partake in clinical discussions with physicians, nurses, other healthcare providers as well as poor communication with his own colleagues" (*id*.), is "[f]requently late [and] "does not make an effort to notify supervisors when a delay will occur" (*id*., at 3); is "very poor diplomatically and professionally" (*id*.), has "[p]oor professional relationships with most of staff…difficulty dealing with authority" (*id*.) and is "insubordinate." *Id*. Thus, defendants have provided evidence of legitimate, non-discriminatory reasons for plaintiff's 2008-2009 Performance Evaluation: plaintiff's poor job performance and documented instances of his poor professional relationships and insubordination. *See, e.g.*, Giacopelli Dep., at 30-32, 38-40; Strianse Dep., at 141:8-10; Giacopelli Dep., at 33; *see also E.E.O.C. v. Town of Huntington,* No. 05-civ-4559, 2008 WL 361136, at *7 (E.D.N.Y. Feb. 8, 2008) ("Because poor job performance constitutes a legitimate, nondiscriminatory reason, [d]efendants have satisfied their burden of production.").

Defendants have also satisfied their burden by articulating multiple legitimate, non-discriminatory business reasons for plaintiff's termination including: (1) Dasrath's chronic tardiness (*see, e.g.*, November 2009 Counseling Memorandum; Giacopelli Dep., at 43:11, 48:6-8; Yee Aff., Ex. G ("Von Braun Dep."), at 13:7-11, 14:24-25; Strianse Dep., at 54:14-15); (2) Dasrath's acts of insubordination and problems with colleagues (*see, e.g.*, July 2007 Counseling Memorandum; 2006-2007 Performance Evaluation; October 2009 Counseling Memorandum;

Von Braun Dep., at 13:11-14, 37:18-20; Strianse Dep., at 54:17-20, 85:22-86:7; Giacopelli Dep., at 104:11-16, 105:2-6); and (3) Dasrath's unsatisfactory job performance, particularly his unwillingness to learn new tasks and follow orders. *See, e.g.*, Strianse Dep., at 54:15-16, 76:5-20, 91:10-21; 2006-2007 Performance Evaluation; 2008-2009 Performance Evaluation; *see also Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000) ("We have held generally that insubordination and conduct that disrupts the workplace are legitimate reasons for firing an employee"); *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 93 (2d Cir. 2001) ("dissatisfaction with [plaintiff's] performance" is "a legitimate, nondiscriminatory reason for [plaintiff's] discharge"); *Brown v. City of New York*, No. 94-civ-7090, 1998 WL 67657, at *3-4 (S.D.N.Y. Feb. 18, 1998) (excessive tardiness and inadequate performance provided legitimate, nondiscriminatory reasons for plaintiff's termination).

c.    Pretext

As defendants have offered legitimate, non-discriminatory reasons for the two adverse employment actions, "the presumption of discrimination created by the *prima facie* case drops out of the analysis, and the defendant[s] 'will be entitled to summary judgment...unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.'" *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002) (citing *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000)). "The plaintiff 'must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination.'" *Mario*, 313 F.3d at 767 (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

In opposition to defendants' motion for summary judgment, plaintiff fails to argue that

defendants' proffered legitimate reasons for the adverse employment actions were pretextual, but only repeats his original arguments that he was subjected to adverse employment actions under circumstances giving rise to an inference of discrimination and that his claims are timely. *See generally* Pl. Opp. Plaintiff's only possible argument for pretext is that his 2008-2009 Performance Evaluation was "entirely false" (Pl. Opp., at 3) and "contradicted the previous year's rating" (Pl. Opp., at 7) which rated Dasrath "as excellent in almost every category" (Pl. Opp., at 3), however, in light of the overwhelming evidence defendants have offered of their legitimate, non-discriminatory reasons for the 2008-2009 Performance Evaluation, this argument is insufficient. *See Viola v. Philips Med. Sys. of N.A.*, 42 F.3d 712, 718 (2d Cir. 1994) (an employee's disagreement with an employer's negative performance evaluation, which was the first adverse review he had received, is not enough allege pretext and support a discrimination claim); *Arrocha v. City Univ. of New York*, No. 02-civ-1868, 2004 WL 594981, at *6 (E.D.N.Y. Feb. 9, 2004) ("the fact that there were prior good evaluations of plaintiff's work cannot alone establish or raise issues that later negative evaluations are pretext for unlawful discrimination"). Dasrath's consistent allegations that certain documents upon which defendants based their employment decisions were "false" (*see* Pl. Opp., at 3; Dasrath Dep., at 158, 240, 261) does not alter this analysis because "[i]n a discrimination case...we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what '*motivated* the employer'; the factual validity of the underlying imputation against the employee is not at issue." *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) (citing *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)); *see also Brown v. Soc'y for Seaman's Children*, 194 F. Supp. 2d 182, 191-92 (E.D.N.Y. 2002) ("engaging in rude, threatening and combative behavior toward co-workers and supervisors is a

legitimate business reason for termination, and in acting upon reports of such conduct, the employer does not engage in discrimination even if those reports are untrue or unfair.").

As plaintiff has failed to show that defendants' proffered reasons for his 2008-2009 Performance Evaluation and termination were illegitimate/pretextual, plaintiff's claims of discrimination pursuant to Title VII are dismissed. *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (Title VII claims properly dismissed where plaintiff failed to "proffer[] any evidence of facts relating to the termination of his employment that would permit a rational factfinder to infer that the termination was motivated by his race, especially in light of his failure to proffer any evidence of facts to refute the [defendant's] evidence…"); *Hussey v. N.Y. State Dep't of Law*, 933 F. Supp. 2d 399, 407 (E.D.N.Y. 2013) (plaintiff "fail[ed] to allege sufficiently that the failure to promote her...was based on her race" where she insisted that defendants' reason was "pretext to cover up racial discrimination" but "offer[ed] no facts in support of that claim").

C.      Plaintiff's NYSHRL Section 296(1) Claim

"The NYSHRL mirrors [the] federal obligations [of Title VII]" (*Brown v. Daikin America Inc.*, 756 F.3d 219, 226 (2d Cir. 2014)) and "claims brought under [the NYSHRL] are analytically identically to claims brought under Title VII." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) (internal citations omitted); *see also Men of Color Helping All Soc., Inc. v. City of Buffalo*, 529 F. App'x 20, 26 (2d Cir. 2013) (summary order). Assuming, without deciding, that Strianse is an "employer" under the NYSHRL,[5]

---

[5]      An individual qualifies as an "employer" and may be sued under Section 296(1) "when that individual has an ownership interest in the relevant organization or the "power to do more than carry out personnel decisions made by others." *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 57 (2d Cir. 2012) (citing *Patrowich v. Chem. Bank,* 63 N.Y.2d 541, 483 N.Y.S.2d 659, 473 N.E.2d 11, 12 (1984) (per curiam)).

plaintiff's claims against her fail for the same reasons cited *supra* in Section II.B. because NYSHRL claims and Title VII claims are "analytically identical" and are governed by "the same standard of proof." *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008); *Chin v. ABN-AMRO N. Am., Inc.*, 463 F. Supp. 2d 294, 309 (E.D.N.Y. 2006) ("Discrimination claims under the NYSHRL are analyzed identically to claims under...Title VII, and the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under...Title VII." (internal citations omitted)).

III.    CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted.  The Clerk of the Court shall enter judgment accordingly and close this case.

**SO ORDERED.**

s/ Sandra J. Feuerstein
Sandra J. Feuerstein
United States District Judge

Dated: March 17, 2015
        Central Islip, New York